65 Cal.Rptr.3d 767 (2007)
155 Cal.App.4th 282
In re A.C. et al., Persons Coming Under the Juvenile Court Law.
Sacramento County Department of Health and Human Services, Plaintiff and Respondent,
v.
Curtis C. et al., Defendants and Appellants.
No. C054642.
Court of Appeal of California, Third District.
August 21, 2007.
David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant Anisha H.
Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant Curtis C.
Robert A. Ryan, Jr., County Counsel, and Carol F. Pulido, Deputy County Counsel, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
ROBIE, J.
Anisha H., mother of the minors, and Curtis C, father of A.C., appeal from orders denying the mother's petition for modification and terminating parental rights. The father contends the juvenile court abused its discretion in denying his request for a continuance to permit him to *768 file a petition for modification. The mother argues the juvenile court abused its discretion in denying her petition for modification. The mother also asserts it was error in failing to give notice of the proceedings to a nonfederally recognized tribe and her trial counsel provided inadequate representation in failing to raise the issue. We affirm.

FACTS
The Department of Health and Human Services (DHHS) filed a petition to remove A. C, age 2, and A. H., age 5, from parental custody in July 2005, due to the parents' domestic violence in the minors' presence, the mother's substance abuse problems, and her failure to comply with an informal supervision plan. The juvenile court sustained the petition and adopted a reunification plan for the parents.
At a hearing in August 2005, information was provided to the court that A.H. may have Indian ancestry. A DHHS paralegal spoke with the minor's paternal grandfather who stated he was Mashpee Wampanoag. The tribe was not a federally recognized tribe but, according to the tribe's Web site, an application for recognition was pending and a final determination was expected in March 2007. No notice was sent to the tribe.
The six-month review report stated the mother had not participated in the services to which she was referred and continued to have positive drug tests. The father, while completing some services, minimized the impact his substance abuse had on his ability to parent, did not participate in an. assessment for substance abuse treatment, and appeared to be unable to put into practice what he learned in the classes he did complete.
According to an addendum in April 2006, the mother was in counseling and intended to begin a parenting class but had been discharged from a substance abuse program for noncompliance. The mother had tested positive several times in the preceding month and was inconsistent in visiting the minors. The father remained uncooperative and refused to engage in services. DHHS recommended termination of services.
A second addendum in May 2006 stated the mother attended three counseling sessions, had entered a parenting class but failed to appear, and had visited the minors only once in the last month. The mother was actively undermining the minors' foster placement by making false accusations and harassing the foster parent. The father was not testing or participating in services but did visit the minor regularly, although his presence was somewhat threatening to the foster parent and her family. The report continued to recommend termination of services, noting that the mother continued to try to shift blame for her failure to complete services and neither parent demonstrated the skills necessary to raise children. At the review hearing in May 2006, the court adopted the recommendation, terminating services and setting a Welfare and Institutions Code[1] section 366.26 hearing.
The assessment for the section 366.26 hearing stated the parents had monthly supervised visits. The mother continued to attend sporadically but the father visited his child regularly. The current caretaker was identified as the prospective *769 adoptive parent and DHHS recommended termination of parental rights.
In August 2006, the mother filed a petition for modification seeking renewed services and increased visitation. She alleged she had entered residential treatment, was testing when able, and was currently in recovery although her pregnancy made her participation difficult.
The combined hearings on the petition for modification and selection of a permanent plan were continued multiple times until January 2007. In the interim, DHHS updated the information on the Mashpee Wampanoag tribe's status which remained pending federal recognition.[2]
An addendum in November 2006 described a visit in which the mother became very upset because the father had given his child a gift at his visit but had not provided a gift for the half-sibling. The mother's agitation upset the minors. The mother then made attempts to talk to A.H. about the upcoming court hearing, criticized the foster mother in the minors' presence, and at the end of the visit forcibly removed A.H. from the visit supervisor's presence to engage in unmonitored contact about the court hearing. When the minors were removed from her, she became very angry and started shouting at the foster mother and the visit supervisor. At the next hearing, the court suspended the mother's visits.
At the section 366.26 hearing in January 2007, the mother testified she was currently in a residential treatment program, having entered the program six days before. She had tested positive at the recent birth of her new child but had tested clean for 30 days thereafter. She acknowledged that after the volatile visit in November, she resumed substance abuse and tested positive but was continuing to struggle to achieve sobriety. She had not recently visited the minors.
The father testified he regularly visited his child. He further testified he had changed his life, was working, and had a stable home.
The father's counsel then asked the court to continue the hearing to allow him to file a petition for modification based upon the new information in the father's testimony. The court found an inadequate showing of good cause for a continuance and denied the request. The court denied the mother's petition for modification due to an insufficient showing and terminated parental rights, selecting a permanent plan of adoption.

DISCUSSION

I-II[**]

III

Notice To The Mashpee Wampanoag Tribe
The mother next contends that the court erred in failing to require notice of the proceedings to the Mashpee Wampanoag tribe, despite the fact that the tribe was not federally recognized at the time of the hearing, because a new law, effective January 2007, gave the court the discretion to permit the tribe to participate in the proceedings and the tribe was unaware of this.
*770 Section 306.6 was enacted as a part of a comprehensive reorganization of statutes relating to application of the Indian Child Welfare Act (ICWA). (Sen. Bill No. 678, Stats.2006, ch. 838.) The requirements of the ICWA apply only to federally recognized tribes. (25 U.S.C. § 1903(8).) Section 306.6 permits the court in a dependency action to allow a tribe which is not federally recognized to appear in the proceeding and present information to the court.[4] By its terms, the statute does not require that any notice be sent to a nonrecognized tribe. (§ 306.6) Further, the statute specifically does not apply either notice provisions found in the ICWA or provisions in state law implementing notice provisions of the ICWA to this situation. (§ 306.6, subd. (d).)
The mother argues that notwithstanding this specific statement of the Legislature, this court should nevertheless imply a notice provision in the statute. We believe it should not. It is apparent, that in enacting section 306.6, the Legislature had in mind the notice and substantive provisions of the ICWA but specifically chose not to require any notice beyond that already required by the ICWA, i.e., notice to federally recognized Indian tribes. It is not our province to insert language in a statute the Legislature chose to omit. (Code Civ. Proc., § 1858.)
We conclude section 306.6 does not require either the court or DHHS to send notice to a tribe which is not federally recognized. The Mashpee Wampanoag tribe was free to request permission to appear if it chose to do so.[5]

*771 IV[***]

DISPOSITION
The orders of the juvenile court are affirmed.
We concur: DAVIS, Acting P.J., and MORRISON, J.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I, II, and IV of the Discussion.
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] The maternal grandmother belatedly claimed Cherokee heritage and notices were sent to the three federally recognized Cherokee tribes. Each indicated the minors were not eligible for membership.
[**] See footnote *, ante.
[4] Section 306.6 provides, in pertinent part, as follows: "(a) In a dependency proceeding involving a child who would otherwise be an Indian child, based on the definition contained in paragraph (4) of Section 1903 of the federal Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.), but is not an Indian child based on status of the child's tribe, as defined in paragraph (8) of Section 1903 of the federal Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.), the court may permit the tribe from which the child is descended to participate in the proceeding upon request of the tribe.

"(b) If the court permits a tribe to participate in a proceeding, the tribe may do all of the following, upon consent of the court:
"(1) Be present at the hearing.
"(2) Address the court.
"(3) Request and receive notice of hearings.
"(4) Request to examine court documents relating to the proceeding.
"(5) Present information to the court that is relevant to the proceeding.
"(6) Submit written reports and recommendations to the court.
"(7) Perform other duties and responsibilities as requested or approved by the court. "[¶] ... [¶]
"(d) This section is intended to assist the court in making decisions that are in the best interest of the child by permitting a tribe in the circumstances set out in subdivision (a) to inform the court and parties to the proceeding about placement options for the child within the child's extended family or the tribal community, services and programs available to the child and child's parents as Indians, and other unique interests the child or the child's parents may have as Indians. This section shall not be construed to make the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.), or any state law implementing the Indian Child Welfare Act, applicable to the proceedings, or to limit the court's discretion to permit other interested persons to participate in these or any other proceedings.
"(e) The court shall, on a case-by-case basis, make a determination if this section is applicable and may request information from the tribe, or the entity claiming to be a tribe, from which the child is descended for the purposes of making this determination, if the child would otherwise be an Indian child pursuant to subdivision (a)."
[5] After the notice of appeal was filed in this case, the Department of the Interior determined that as of May 23, 2007, the Mashpee Wampanoag tribe is federally recognized under ICWA. (72 Fed.Reg. 8007 (Feb. 22, 2007).) At this court's direction, DHHS notified the tribe of this proceeding on July 5, 2007, and there has been no response.
[***] See footnote *, ante.